**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1428**

---

MARY LYNN SHUMATE,

Plaintiff - Appellant,

v.

CITY OF LYNCHBURG; GREGORY WORMSER, Fire Chief, In his Official
Capacity; WYNTER BENDA, City Manager, In his Official Capacity,

Defendants - Appellees.

---

Appeal from the United States District Court for the Western District of Virginia, at
Lynchburg.  Norman K. Moon, Senior District Judge.  (6:23-cv-00032-NKM-CKM)

---

Argued:  May 6, 2025                           Decided:  August 20, 2025

---

Before DIAZ, Chief Judge, NIEMEYER, Circuit Judge, and Matthew J. MADDOX,
United States District Judge for the District of Maryland, sitting by designation.

---

Affirmed in part, vacated in part, and remanded by per curiam unpublished opinion.

---

**ARGUED:**  Thomas Eugene Strelka, VIRGINIA EMPLOYMENT LAW, Roanoke,
Virginia, for Appellant.  Chad Allan Mooney, PLDR LAW, PC, Lynchburg, Virginia, for
Appellee.  **ON BRIEF:**  John E. Falcone, Luke J. Malloy, III, PLDR LAW, PC,
Lynchburg, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After Mary Shumate, a firefighter for the city of Lynchburg, Virginia, made allegedly inappropriate remarks about another employee's sexual orientation, the Fire Chief demoted her. She commenced this action against the City, the City Manager, and the Fire Chief, alleging (1) that her demotion was the product of discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act; (2) that it was made in retaliation for previous allegations that she had made about a hostile work environment, again in violation of Title VII, and (3) that the individual defendants violated Virginia's Fraud and Abuse Whistle Blower Protection Act, Va. Code Ann. §§ 2.2-3009 to -3014. The district court granted the defendants' motion for summary judgment on Shumate's Title VII claims and dismissed her state law claim based on common law sovereign immunity.

For the reasons that follow, we affirm the district court's grant of summary judgment on the Title VII claims. And with respect to the state law claim, we vacate the dismissal order and remand to allow the district court to determine whether to proceed further with that claim or to decline to exercise supplemental jurisdiction over that claim. *See* 28 U.S.C. § 1367(c)(1).

I

Mary Shumate's superiors were informed in October 2021 that she had instructed a subordinate to "inform her" if the homosexuality of a new team member "bothered [the subordinate] or was offensive or if [the new team member] did anything that made [the subordinate] feel uncomfortable." In response, Deputy Chief Jonathan Wright opened an

investigation into whether Shumate had violated the City of Lynchburg's Code of Conduct and harassment policy, and he retained retired Virginia State Police Trooper Randy Campbell to conduct it.  Pending the investigation, Fire Chief Gregory Wormser placed Shumate on administrative leave, with pay.

State Trooper Campbell interviewed 14 witnesses and completed a report, concluding that "[t]here have been clear violations of Discriminatory Behavior, Unprofessional Behavior, and Acting Beyond a Scope of Authority as delineated by the City of Lynchburg Code of Conduct and the City of Lynchburg Policy Workplace Expectations and Procedures."  On receiving this report, Chief Wormser sent Shumate a notice announcing his intent to demote her and providing her the opportunity to show cause why she should not be demoted.  But at their subsequent meeting, Shumate presented no information to change Chief Wormser's mind, and he demoted her on March 2, 2022.  He also advised her that she could appeal his "decision through the City's Employee Grievance Procedure which [was] explained in the Employment Policies and Procedures Manual."

A month later, Shumate sent an email to another superior at the Fire Department in which she stated,

> I do not want to move a grievance forward, but I feel it is important to keep a record that is accurate about this.  I do not believe that the situation was fairly investigated and I believe that if I had been a male officer, I never would have been written up or demoted.  I feel it is important to share this.

In response to this email, the City retained an outside attorney to investigate Shumate's assertion of discrimination on the basis of sex, and the attorney found her claim unfounded.

3

Shumate filed a charge of discrimination with the Virginia Office of Civil Rights in which she complained that she "was discriminated and retaliated, and the City and its employees created and promoted a hostile work environment," and the Office of Civil Rights sent Shumate a notice of a right to sue.

On June 7, 2023, Shumate commenced this action against the City of Lynchburg, Fire Chief Wormser, and City Manager Wynter Benda, alleging, in three counts, (1) discrimination by the City on the basis of sex, in violation of Title VII of the Civil Rights Act, (2) retaliation by the City, in violation of Title VII, and (3) retaliation by the individual defendants pursuant to the Fraud and Abuse Whistle Blower Protection Act, Va. Code Ann. §§ 2.2-3009 to -3014. As to the two Title VII counts, the district court granted the City's motion for summary judgment by order dated May 7, 2024. It concluded on Count 1 that Shumate failed to "point to *any evidence* indicating a dispute of material fact as to her discrimination claim." And as to Shumate's retaliation claim in Count 2, it concluded that Shumate had indeed "made out a *prima facie* case of retaliation"; but that the defendants had "responded with a legitimate, non-retaliatory basis" for her demotion; and that Shumate had failed to show "that the [City's] reason [for her demotion] was false and that [retaliation] was the real reason for the challenged conduct." (Alterations in original) (quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015)).

And as to the state law claim, the court dismissed it by order dated September 5, 2023, ruling that sovereign immunity protected the defendants. Because Shumate consented to the dismissal of the City of Lynchburg, the court addressed only the immunity of the City Manager and Fire Chief without addressing whether they were proper

4

defendants under the Act. The court held that they enjoyed common law sovereign immunity in federal court for Shumate's claim under State law. While it stated that Shumate could "pursue [her] claims in state court" to receive the benefit of Virginia's Fraud and Abuse Whistle Blower Protection Act, as the Act "waives sovereign immunity in state court," it concluded that "the Act does not waive sovereign immunity in federal court." And because "[t]he Supreme Court has routinely held that 'a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court,'" the court determined that "federal court is an improper venue for claims under Virginia's Fraud and Abuse Whistle Blower Protection Act." (Quoting *Sossamon v. Texas*, 563 U.S. 277, 285 (2011)).

From the district court's orders, Shumate filed this appeal.

II

First, as to Shumate's Title VII discrimination claim, she argues that she provided sufficient instances of differential treatment to state a claim. We review the district court's grant of summary judgment on both Title VII claims de novo.

Here, Shumate asserts that

> she was not permitted to ask questions of her supervising Captain, while other male employees were not restricted; that she was reprimanded for reporting that her standard issue one-size-fits-all ballistics vest was unwearable because it was so large, and told that (as a woman) she needed to "get used to being uncomfortable"; that her requests for time off and for training were repeatedly denied; that she, and not her male co-workers, were required to submit a doctor's note when she missed work.

(Cleaned up). The evidence in the record, however, provides explanations for each of those circumstances, none of which suggest discrimination on the basis of sex. As to Shumate's

5

allegation that she was told to not ask her "supervising Captain" questions, the relevant evidence showed no support for the suggestion that males and females were treated differently.

As to Shumate's allegation that she was unfairly forced to wear an ill-fitting ballistic vest, Deputy Chief Lipscomb stated that wearing one-size-fits-all vests did not involve the majority of a firefighter's time working, and any comment directing Shumate to get used to an ill-fitting vest only acknowledged that the vests have a limited, protective purpose, which was true regardless of the gender of the firefighter. Again, there was no evidence to suggest that the size of the vests and Lipscomb's comment could support a claim of discrimination on the basis of sex.

As to Shumate's allegation that she was denied shift requests, Shumate explained in her deposition that she "was denied" a shift request "for the same reason" that Captain Candace Brown "was approved," yet she admitted that Captain Brown was a woman. It hardly follows, therefore, that she suffered discrimination on the basis of sex when another woman's shift request was approved while hers was denied.

Finally, as to Shumate's allegation that she was required to provide a doctor's note for work missed because of illness, suggesting that it was required because she was female, the evidence showed that in the same email requiring Shumate to provide a doctor's note, two other employees were also so required. But the two other employees were male. Again, this evidence hardly shows that the note requirement caused Shumate to suffer discrimination on the basis of sex.

6

In short, we conclude that the district court did not err in granting summary judgment on Shumate's Title VII discrimination claim.

### III

As to Shumate's second Title VII claim, she contends that her inappropriate comments about a new gay team member were only a pretext for her retaliatory demotion because (1) the affidavit of Captain Candace Brown, who reported Shumate's inappropriate comments, was "patently false," and (2) her comments were made in anticipation of possible sexual-orientation discrimination by her subordinate.

Both arguments, however, fail. First, Shumate provides no evidence that Captain Brown's affidavit was false. Indeed, her claim that it was false can hardly stand when, in the same breath, Shumate implicitly acknowledges its truth by attempting to justify what she had said as "simply follow[ing] the City's EEO policy regarding a supervisor's duty when confronting possible discrimination in the workplace." And as to whether her comments were appropriate, the City hired an investigator who concluded that her comments had made Shumate's subordinates "pretty upset" and that they were "clear violations" of the code of conduct. In addition, Chief Wormser specified that he was demoting Shumate because "[m]ore than one employee has found [her] behavior to be harassing" and "to constitute sexual harassment." And he added that Shumate was also "not honest during the investigation by offering conflicting statements of the situation" when she initially denied making *any* comments about the gay firefighter but then admitted that had she made comments about his sexual orientation, they were harmless.

Simply put, no evidence in the record suggests that the City's reasons for demoting Shumate were pretextual. While she clearly disagrees with the reasons given and argues that they were insufficient, she does not demonstrate that they were not the true ones. *See Foster*, 787 F.3d at 250.

Thus, we conclude that the district court did not err in determining that the evidence was insufficient to show pretext.

IV

As to the state law claim in Count 3, Shumate contends that the district court erred "because it conflated Eleventh Amendment immunity provided to states and their instrumentalities in federal court with municipal governmental function immunity in tort." She contends that "[c]ities or municipalities are not 'instrumentalities of the State'" and accordingly do "not benefit from the same default position of sovereign immunity" as the States, which "have Eleventh Amendment immunity unless they expressly waive that immunity."

We agree that Eleventh Amendment immunity does not apply to the defendants here. As we have noted, "Eleventh Amendment immunity 'does not extend to counties and similar municipal corporations,' . . . even if the counties and municipalities exercise a 'slice of State power.'" *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) (first quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977); and then quoting *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency,* 440 U.S. 391, 401 (1979)); *accord Alden v. Maine*, 527 U.S. 706, 756 (1999) ("The immunity does not extend

8

to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State").

But that does not end the discussion, as the contours of the different kinds of sovereign immunity applied here might be more complicated. For example, even though "municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit," *Jinks v. Richland County*, 538 U.S. 456, 466 (2003), Virginia courts have held that "local governments share in the Commonwealth's sovereign immunity," *Massenburg v. City of Petersburg*, 836 S.E.2d 391, 395 (Va. 2019). Yet, "the fact that a governmental entity has been given sovereign immunity in its own state courts by state law is not dispositive of federal jurisdiction," and indeed, "even when a state creates governmental units that it wishes to be immune from suit in federal court, a federal court may disregard the state's wishes." 13 *Wright & Miller's Federal Practice & Procedure* § 3524.2 (3d ed. 2008).

In any event, the sovereign immunity that the Commonwealth generally extends to local governments appears to have no relevance here because Virginia's Fraud and Abuse Whistle Blower Protection Act actually "waives sovereign immunity in state court" for claims brought against employers as defined by the Act. *See* Va. Code Ann. §§ 2.2-3010, -3011(D).

While Shumate consented to dismissal of her claim against the City, she did not do so with respect to her claims against the Fire Chief and City Manager. Yet, the district court did not address whether those individuals were proper defendants under the Act.

9

Because the district court improperly granted the defendants sovereign immunity, we vacate its order of dismissal dated September 5, 2023, and remand for the court to consider next steps. We express no direction as to how the court should proceed, though we note that it could allow the state law claim to continue in federal court[*] or it could decline to exercise its supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(c)(1) (authorizing a district court to decline to exercise supplemental jurisdiction if "the claim raises a novel or complex issue of State law"). We leave all options to the district court's discretion.

\*     \*     \*

For the reasons given, we affirm the district court's order dated May 7, 2024, granting the defendants' summary judgment on Shumate's Title VII claims; we vacate the district court's order dated September 5, 2023, dismissing her state law claim; and we remand that claim for further proceedings.

IT IS SO ORDERED.

---

[*] The district court concluded that the state law claim had to proceed in state court, but that is not correct.

10